## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
UNITED STATES OF AMERICA       )
)
       v.                   )       Criminal No. 19-CR-10081
)
GORDON ERNST, *et al.*,        )       ORAL ARGUMENT REQUESTED
)
          Defendants.    )
_____)

### DONNA HEINEL'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT PURSUANT TO FEDERAL RULES OF PROCEDURE 12(b)(3)(B)(v)

## I.    INTRODUCTION

This case is an unprecedented attempt by the government to wildly expand the application of the RICO statute to every fraud-based act involving multiple individuals. The Indictment flatly fails to plead the association-in-fact enterprise by failing to demonstrate any coordinated efforts among the defendants to achieve the stated common purpose of the enterprise or relationships among those associated with the enterprise. Rather, the Indictment attempts to take disparate individuals and place them into a singular RICO Conspiracy. This poor attempt to paint this matter as an organized criminal enterprise rather than what it truly is – parallel, uncoordinated acts with William Rick Singer – cries out for dismissal. Count One must be dismissed for failure to plead a RICO Conspiracy.

//

//

//

//

//

## II.    THE INDICTMENT[1]

The Indictment charges one count as to all 12 uniquely situated defendants – a RICO Conspiracy, in violation of 18 U.S.C. § 1962(d).  The General Allegations are pled in paragraphs 1-127. (Dkt. No. 1 at ¶¶ 1-127.)

### A.  Indictment Structure

First, the Indictment identifies the defendants charged, including where they work and what their title is at their separate places of employment. (Id. at ¶¶ 1-12.)

Second, the Indictment identifies the enterprise.  The Edge College & Career Network, LLC is a for-profit college counseling and preparation business established by Singer in 2007. (Id. at ¶ 13.)  The Key Worldwide Foundation ("KWF") is a non-profit corporation founded by Singer.  (Id. at ¶ 14.)  The Indictment states that the Key Worldwide Foundation and the Edge College & Career Network, LLC comprise an association-in-fact enterprise – the "Key Enterprise."  (Id. at ¶ 15.)

Third, the Indictment identifies the "other relevant entities" as the testing organizations and individual universities while noting that "[a]ll of the Universities recruit student athletes, and typically apply different criteria when evaluating applications from students with demonstrated athletic abilities." (Id. at ¶ 37.)

Fourth, the Indictment describes the purpose of the enterprise as being to "[a] to facilitate cheating on college entrance exams; [b] to facilitate the admission of students to elite universities as recruited athletes, regardless of their athletic abilities; and [c] to enrich the defendants and Singer personally."  (Id. at ¶ 38.)

---

[1] The following allegations in the Indictment are treated as true for purposes of this motion only. Heinel disputes the Indictment's allegations and will challenge them at the appropriate time, if necessary.

Fifth, the Indictment describes the manner and means by which the defendants carried out the RICO conspiracy by:

> a. facilitating cheating on the ACT and SAT exams in exchange for bribes by arranging for or allowing a third party—generally Mark Riddell, a resident of Palmetto, Florida—to secretly take the exams in place of the actual students, or to replace the students' exam responses with his own; b. designating applicants as purported recruits for competitive college athletic teams, without regard for the applicants' athletic abilities, in exchange for bribes; and c. concealing the nature and source of the bribe payments by funneling payments through the KWF charitable accounts.

(Id. at ¶ 39.)

Sixth, the Indictment describes the acts in furtherance of the RICO Conspiracy. (Id. at ¶¶ 40-127; see Sec. II.B., *infra*.)

**B. Acts in Furtherance of the RICO Conspiracy**

The acts in furtherance of the RICO Conspiracy are split into two sections – cheating on the standardized tests and the student-athlete recruitment scheme.

The first of these sections alleges the test cheating scheme involving defendants Igor Dvorskiy, Lisa "Niki" Williams, Steven Masera, and Martin Fox. (Id. at ¶¶ 41-49.) The remaining defendants – Gordon Ernst, Donna Heinel, Ali Khosroshahin, Laura Janke, Jovan Vavic, Jorge Salcedo, William Ferguson, and Mikaela Sanford – are not alleged to be a part of this scheme. (Id.)

The second section alleges the student-athlete recruitment scheme. (Id. at ¶¶ 50-127.) Here, the Indictment lists eight different universities (five private and three public) and efforts by defendant coaches and administrators at each separate school to get a student admitted to that particular school as an athletic recruit. (Id.) Except for Janke who is alleged to have prepared fake athletic profiles for students at Yale and Stanford University, and Khosroshahin who is alleged to have prepared a fake athletic profile for a student at University of California, Los

Angeles, the Indictment fails to allege that any of the other remaining coach and administrator defendants – Ernst, Heinel, Ferguson, Vavic and Salcedo – had any knowledge of the student-athlete recruitment scheme at any university other than their own.  (Id.)  The Indictment also fails to allege that any of the defendants, even those employed by the same school, i.e., Heinel, Janke, Khosroshahin or Vavic had knowledge of each other's acts.

Finally, because there is no connection between the cheating on the standardized test and the student-athlete recruitment schemes, the Indictment fails to plead the common purpose of the enterprise.  These fatal flaws in this Indictment warrant dismissal.

## III.    STANDARD OF REVIEW

Under Rule 12(b)(3)(B)(v), the Court may hear a motion alleging a defect in the indictment and a claim that the indictment fails to state an offense.  See Fed. R. Crim. P. 12(b)(3)(B)(v).  "The defense that the indictment 'fail[s] to state an offense' must be raised by pretrial motion when 'the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits.'"  *United States v. Rodriguez-Rivera*, 918 F.3d 32, 34 (1st Cir. 2019) (quoting Fed. R. Crim. P. 12(b)(3)(B)(v)).  As this Motion can be heard without a trial on the merits, it is proper for the Court to entertain it at this time.  *See id*.

"When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)).  For an indictment to be sufficient it must "first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which [s]he must defend, and, second, enable[]

h[er] to plead an acquittal or conviction in bar of future prosecutions for the same offense."

*United States v. Laureano-Perez,* 797 F.3d 45, 60 (1st Cir. 2015) (internal citations omitted); *see also* Fed. R. Crim. P. 7(c) (requiring a "plain, concise and definite written statement of the essential facts constituting the offense charged").   However, merely restating the language of the underlying statute is not enough unless "the excerpted statutory language sets out all ... elements of the offense without material uncertainty."   *United States v. Troy,* 618 F.3d 27, 34 (1st Cir. 2010).  A dismissal is appropriate when an indictment fails to state an element of the offense. *See United States v. Resendiz-Ponce,* 549 U.S. 102, 108 (2007); *United States v. Sampson,* 371 U.S. 75, 78-79 (1962).

## IV.    COUNT ONE MUST BE DISMISSED FOR FAILURE TO STATE AN OFFENSE

Section 1962(d), as charged here, makes it unlawful to "conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).  It is alleged that Heinel and the other co-defendants conspired to violate section 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).

The elements that must be alleged for a RICO Conspiracy are: "(1) the existence of enterprise affecting interstate commerce, (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise, (3) that the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate

offenses." *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1561 (1st Cir. 1994);[2] *see also* 18 U.S.C. §§ 1961(1), (5), 1962(c); *United States v. Rodriguez-Torres*, --- F.3d ----, No. 16-1507, 2019 WL 4463275, at *2 (1st Cir. Sept. 18, 2019) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)) (holding that a RICO Conspiracy under 18 U.S.C. § 1962(d) "requires proof that the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'")

Here, the enterprise alleged is an "association-in-fact enterprise." (Dkt. No. 1 at ¶ 15.) An association-in-fact enterprise is defined by section 1961(4) as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). For reasons set forth below, this Indictment does not adequately plead an association-in-fact enterprise.

### A. The Indictment Uses "Pattern of Racketeering Activity" as a Proxy for an "Association-In-Fact Enterprise"

The Indictment fails to establish the existence of an "association-in-fact enterprise" but instead relies on "pattern of racketing activity" as a substitute. See 18 U.S.C. §§ 1961(1), (5). These two distinct elements cannot stand in for the other and must both be properly pled.

> While the proof used to establish these separate elements [i.e., the "enterprise" and the "pattern of racketeering activity"] may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

---

[2] The First Circuit has held that precedent in civil RICO cases is applicable to criminal RICO cases. *See United States v. Shifman,* 124 F.3d 31, 35 n.1 (1st Cir. 1997) (abrogated recognized by *United States v. Leoner-Aguirre*, No. 18-1333, 2019 WL 4564724, (1st Cir. Sept. 20, 2019), on other grounds) ("[I]t is appropriate to rely on civil RICO precedent when analyzing criminal RICO liability" because "[t]he standard is the same for both criminal and civil RICO violations") (citing 18 U.S.C. § 1962).

*United States v. Cianci*, 378 F.3d 71, 81-82 (1st Cir. 2004) (*citing United States v. Turkette*, 452 U.S. 576, 583 (1981)). *See also Bachman v. Bear Stearns & Co., Inc.,* 178 F.3d 930, 932 (7th Cir. 1999) (Posner, C.J.) (noting that a contrary rule would erroneously make "every conspiracy to commit fraud ... a RICO [enterprise] and consequently every fraud that requires more than one person to commit ... a RICO violation").

The Indictment identifies Singer's entities as the enterprise, but it fails to describe how the individual defendants function as a continuing unit acting on behalf of the enterprise. The Key Enterprise lacks a structure delineating the "interrelation or arrangement of [the defendants] in a complex entity." *Boyle v. United States*, 556 U.S. 938, 945 (2009). The Indictment also fails to allege a sufficient connection between Heinel and the Key Enterprise. Instead, the Indictment appears to treat the Key Enterprise as interchangeable with Singer but fails to state such a connection. Nor is there any allegation of the various defendants "common or shared purpose" or how only Singer's entities are capable of "maintain[ing] an ongoing organizational structure through which the [defendants] function as a continuing unit." "*Association-in-fact enterprise*," BLACK'S LAW DICTIONARY (11th ed. 2019) (citing 18 U.S.C. § 1961(4); *Turkette*, 452 U.S. 576). Without this specificity, Heinel is deprived of sufficient information to fairly inform her of the charges against which she must defend. *See Laureano-Perez,* 797 F.3d at 60; Fed. R. Crim. P. 7(c). Without a properly pled enterprise, there is no RICO conspiracy. Count One must be dismissed.

//

//

//

**B.  The Indictment Fails to Properly Plead an Association-In-Fact Enterprise**

An association-in-fact enterprise requires "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946 ("*Boyle* Standard").  At best, the Indictment has only sufficiently pled one of the three required elements of an association-in-fact enterprise – the longevity requirement – spanning from 2011 to 2019. [3] (Dkt. 1 at ¶ 129.)  However, while the Indictment states multiple purposes, there is no common purpose between the defendants, nor importantly, a relationship among those allegedly associated.  "RICO . . . is not a conspiracy statute.  Its draconian penalties are not triggered just by proving conspiracy.  'Enterprise' connotes more." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997) (Posner, C.J.).  That "more" is nowhere to be found in this Indictment.

1.  <u>The Indictment Fails to Allege a Common Purpose</u>

An association-in-fact enterprise is "a group of persons associated together for a *common purpose* of engaging in a course of conduct." *Turkette*, 452 U.S. at 583 (emphasis added); *see also Rodriguez-Torres*, --- F.3d ----, No. 16-1507, 2019 WL 4463275, at *3 (quoting *Boyle*, 556 U.S. at 946) (holding that the "the group must share the 'common purpose of engaging in a course of conduct'").

Here, the Indictment lists three purposes: "[a] to facilitate cheating on college entrance exams; [b] to facilitate the admission of students to elite universities as recruited athletes, regardless of their athletic abilities; and [c] to enrich the defendants and Singer personally" but fails to plead how these purposes are *common* to all of the defendants.  For example, there is no

---

[3] It should be noted, however, that the Indictment alleges the racketeering activity started in 2011 (Id. at ¶¶ 40, 129), however, the Key Worldwide Foundation – which comprises half of the "Key Enterprise" – did not exist until 2012. (Id. at ¶ 14.)

allegation that Heinel, Ernst, Khosroshahin, Janke, Vavic, Salcedo, Sanford, or Ferguson agreed "to facilitate cheating on college entrance exams." (Dkt. 1 at ¶ 38; see also id. at ¶¶ 41-49.) Likewise, there is no allegation that Dvorskiy and Williams agreed "to facilitate the admission of students to elite universities as recruited athletes." (See id. at ¶ 38; see also id. at ¶¶ 50-127.)

Further, regarding the second purpose, "to facilitate the admission of students to elite universities as recruited athletes, regardless of their athletic abilities," there is no allegation that Heinel agreed or knew about facilitating the admission of students as recruited athletes to any school other than the University of Southern California ("USC") or even knew about that other USC employees allegedly involved in the conspiracy. There is no allegation, for example, that Heinel agreed or knew that Janke was preparing fake athletic profiles for students or facilitating the admissions of student-athletes into Stanford University, USC or Yale. (See id. at ¶ 38; see also id. at ¶¶ 54-56, 61-62, 70-71, 73-74 and 113.) Similarly, Gordon Ernst, the head tennis coach at Georgetown University, has no alleged purpose to admit recruited athletes to Yale University, USC, the University of California at Los Angeles, Wake Forest University, Stanford University, the University of Texas at Austin, nor the University of San Diego. (See id. at ¶ 1; see also id. at ¶¶ 84-92.) Jovan Vavic, the head water polo coach at USC, has no alleged purpose to admit recruited athletes to any of the other universities. (See id. at ¶ 5; see also id. at ¶¶ 60-83.) William Ferguson, the women's volleyball coach at Wake Forest University, is not alleged to have agreed to facilitate the admission of recruited athletes to any school other than Wake Forest University. (See id. at ¶ 7; see also id. at ¶¶ 110-11.)

The "groupings of individuals" by each separate school are not "sufficiently organized and devoted to the alleged illicit purpose" of "getting recruited athletes into universities" – plural. *Cianci*, 378 F.3d at 83; Dkt. No. 1 at ¶ 38. At best the Indictment alleges that individuals

shared the common purpose of getting students into a university – singular.  The alleged actions

of the defendants, in this case, were siloed, and not performed for the continuing unit of the Key

Enterprise. *Cf. Cianci*, 378 F.3d at 83 (delineating cases in which the groupings of individuals

were "sufficiently organized and devoted to the alleged illicit purposes that the resulting whole

functioned as a continuing unit" and that the "common purpose was dictated by individuals who

controlled the [] entities' activities and manipulated them to the desired illicit ends.")

The third purpose alleged, "to enrich the defendants and Singer personally" is insufficient

for a common purpose as "'common purpose' does not mean commonality of motive, it means

coordinated activity in pursuit of a common objective." *In re Lupron Mktg. & Sales Practices

Litig.*, 295 F. Supp. 2d 148, 173 (D. Mass. 2003); Dkt. No. 1. at ¶ 38.  Alleged personal

enrichment of each of the defendants lacks coordinated activity between the defendants because

each defendant is only working to financially enrich him or herself.

The three alleged purposes of the enterprise fail to meet the common purpose standard as

required for an association-in-fact enterprise and instead show a disjointed collection of

defendants working on their own behalf rather than on behalf of the Key Enterprise. (See

Diagram 1, *infra*.)  At most, Singer and some charged defendants may have shared a common

purpose.  However, that purpose cannot properly be imputed to the other defendants working

toward their own ends.  "[A]llegations that 'show different subsets of [a] group pursuing their

own ends separately' rather than functioning 'together as a coherent unit' fail to establish an

association-in-fact enterprise." *Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic,

Inc.*, 266 F. Supp. 3d 502, 523 (D. Mass. 2017) (quoting *Nelson v. Nelson*, 833 F.3d 965, 968

(8th Cir. 2016)).

//

**Diagram 1:**



Without a properly pled purpose, there can be no RICO Conspiracy. Count One must be dismissed.

> 2. <u>The Indictment Fails to Allege Relationships Among Those Associated with the Enterprise</u>

The Indictment fails to "state how the [defendants] collaborated with *each other* or if the [defendants] were even aware of each other's participation in the alleged scheme." *Ezell v. Lexington Ins. Co.*, 286 F. Supp. 3d 292, 298 (D. Mass. 2017) (emphasis added); *see also Gov't Emps. Ins. Co. v. Analgesic Healthcare, Inc.*, No. 16-11970, 2017 WL 1164496, at *2 (D. Mass. Mar. 28, 2017) (holding that parallel conduct among defendants did not support an inference that they "coordinated or collaborated.")  "RICO does not penalize parallel, uncoordinated fraud." *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v.*

*Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013) (internal citations omitted).  Instead "there must be evidence of 'interpersonal relationships' calculated to affect that purpose, *i.e.*, evidence that the group members came together to advance 'a certain object' or 'engag[e] in a course of conduct.'" *Rodriguez-Torres*, --- F.3d ----, No. 16-1507, 2019 WL 4463275, at *3 (quoting *Boyle*, 556 U.S. at 946).

Here, the acts in furtherance, while listing many alleged actions by different defendants, do not describe a relationship joining the defendants, nor any coordinated activity among them towards any of the three alleged purposes. (See generally, Dkt. No. 1).  Rather the Indictment merely states that the defendants conspired together "in the conduct of the affairs of the enterprise through a pattern of racketeering" by agreeing to commit at least two acts of racketeering. (Id. at ¶ 129.)  With respect to Heinel, the Indictment lists multiple "racketeering acts" yet does not state how Heinel and the other co-defendants are "associated together in any meaningful sense, or [whether they were] even aware of one another's existence as participants in a scheme to defraud." *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d at 173–74.

At most, the allegations in the Indictment set forth a "hub-and-spoke" structure with Singer occupying the hub and Heinel and the other co-defendants as the spokes, with no common rim linking the individual spokes together.[4]  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010) ("[T]he critical issue for … the hub and spoke system is how the spokes are connected to each other.") (*quoting Total Benefits Planning Agency, Inc. v. Anthem Blue*

---

[4] "A rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction." *Dickson v. Microsoft Corp.,* 309 F.3d 193, 203 (4th Cir. 2002); *see also Kotteakos v. United States*, 328 U.S. 750, 755 (1946)).

*Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008)).  While each defendant may have been

working with Singer, there is nothing connecting each defendant to the others.  Thus, as was

similarly found by the Third Circuit:

> [e]ven under the relatively undemanding [*Boyle* Standard], these
> allegations do not adequately plead an association-in-fact enterprise.
> They fail the basic requirement that the components function as a
> unit, that they be 'put together to form a whole.' Because [the
> government's] factual allegations do not plausibly imply anything
> more than parallel conduct by the [defendants], they cannot support
> the inference that the [defendants] 'associated together for a
> common purpose of engaging in a course of conduct.'

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 374 (quoting *Boyle*, 556 U.S. at 945-46)

(internal citations omitted).  "For example, suppose that several individuals, independently and

without coordination, engaged in a pattern of crimes listed as RICO predicates—for example,

bribery or extortion.  Proof of these patterns would not be enough to show that the individuals

were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4.  *See also* Gregory P. Joseph, Civil

RICO: A Definitive Guide 106 (3d ed. 2010) (stating that a "rimless hub-and-spoke

configuration would not satisfy the 'relationships' prong of *Boyle*'s structure requirement").

Nowhere in the Indictment is there an allegation of a relationship between Heinel and the

other co-defendants.  In fact, there is no allegation that the defendants were even aware of each

other's actions.  Even though Heinel and a few of the co-defendants worked at USC, nothing in

the Indictment alleges that they worked together or were aware of each other's alleged role in the

RICO Conspiracy.  The only association alleged in the Indictment with regard to Heinel is the

one between her and Singer and possibly through Singer, his clients. (Dkt. No. 1 at ¶¶ 60-83.)

This is true for the coaches at other universities as well. (Id. at ¶¶ 60-111.)

//

//

| Co-Defendant | Alleged Connection to Heinel |
|---|:---:|
| Ernst | **X** |
| Janke | **X** |
| Khosroshahin | **X** |
| Masera | **X** |
| Sanford | **X** |
| Fox | **X** |
| Dvorskiy | **X** |
| Williams | **X** |
| Ferguson | **X** |
| Salcedo | **X** |
| Vavic | **X** |

(See id. at ¶¶ 40-127.)

What is alleged are parallel, uncoordinated frauds being committed by Singer and individuals from Yale, USC, Georgetown University, the University of California, Los Angeles, Wake Forest University, Stanford University, the University of Texas at Austin, the University of San Diego, and testing agencies for college entrance exams. "[A] RICO claim pleading 'nothing more than parallel conduct by separate actors' is insufficient: 'there has to be something that ties together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together—acting in concert—by means of' racketeering acts." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 374 (quoting *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010)). The separate and unconnected spokes are insufficient for a RICO Conspiracy – connection with the hub is not enough, there must be a rim. Without relationships among those associated with the enterprise, there can be no RICO Conspiracy. Count One must be dismissed.

## V.      CONCLUSION

For the foregoing reasons, Count One must be dismissed for failure to state an offense.

Dated:  October 15, 2019                    Respectfully submitted,


                                             */s/    Nina Marino*                  _____
                                            NINA MARINO (CA Bar No. 142814)
                                            KAPLAN MARINO, P.C.
                                            9454 Wilshire Blvd., Ste. 902
                                            Beverly Hills, CA 90212
                                            Telephone:  (310) 557-0007
                                            marino@kaplanmarino.com
                                            (Admitted *pro hac vice*)
                                            Counsel for Dr. Donna Heinel


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 15, 2019.


                                             */s/    Nina Marino*                  _____
                                            NINA MARINO
                                            Counsel for Dr. Donna Heinel