**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL NO.: 19-CR-10081-IT-MPK |
| JOVAN VAVIC and DONNA HEINEL, | |
| Defendants. | |

**JOINT MOTION TO SUPPRESS "CONSENSUAL WIRETAP" RECORDINGS**

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ............................................................................................................... 5

BACKGROUND ................................................................................................................ 6

ARGUMENT .................................................................................................................... 10

   I.   Regardless of Consent, A Wire "Provider" Cannot "Assist" Law Enforcement in Monitoring Absent A Court Order Or Special Certification .............................................................. 10

      A. The Unambiguous Plain Language of 18 U.S.C. § 2511 Requires Either a Court Order or Special Certification For a "Provider" to "Assist" Law Enforcement ....................................... 11

      B. The Structure of 18 U.S.C. § 2511 Confirms the Requirements for "Providers" to "Assist" Law Enforcement ......................................................................................................... 12

      C. The Legislative History Likewise Confirms the Requirements for "Providers" to "Assist" Law Enforcement ......................................................................................................... 14

   II.  Even If Consent Sufficed, the Government Did Not Obtain Singer's Consent for the At-Issue Line ......................................................................................................................... 18

   III. The Remedy is Suppression ......................................................................................... 20

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Application of United States.*,
    128 F. Supp. 3d 478 (D.P.R. 2015) ........................................................................... 11, 17

*City of Providence v. Barr*,
    954 F.3d 23 (1st Cir. 2020) ............................................................................................. 12

*DirecTV, Inc. v. Treworgy*,
    373 F.3d 1124 (11th Cir. 2004) ...................................................................................... 12

*In re Hill*,
    562 F.3d 29 (1st Cir. 2009) ................................................................................. 11, 12, 14

*Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*,
    215 F.3d 195 (1st Cir. 2000) .......................................................................................... 13

*United States v. Abdelaziz*,
    19-CR-10080-NMG, Dkt. 2099 ............................................................................. 5, 7, 19

*United States v. Ernst*,
    502 F. Supp. 3d 637 (D. Mass. 2020) ............................................................................ 18

*United States v. Giordano*,
    416 U.S. 505 (1974) ....................................................................................................... 20

*United States v. Hoffman*,
    832 F.2d 1299 (1st Cir. 1987) ........................................................................................ 16

*United States v. Lopez*,
    300 F.3d 46 (1st Cir. 2002) ...................................................................................... 15, 16

*United States v. Rodriguez*,
    No. 17-CR-10066-IT, 2018 WL 988054 (D. Mass. Feb. 20, 2018) ................................. 11

**Federal Statutes**

18 U.S.C.
    § 2510 *et seq.* ............................................................................................................. 5, 19
    § 2511(1)(a) ...................................................................................................................... 9
    § 2511(2)(a)(ii) ........................................................................................................ *passim*
    § 2511(2)(c) ......................................................................................................... 10, 11, 13
    § 2515 ............................................................................................................................. 20
    § 2518 ....................................................................................................................... 11, 17
    § 2518(10)(a)(i) .............................................................................................................. 20
    § 2551(2)(C) ................................................................................................................... 16

Electronic Communications Privacy Act ............................................................................ *passim*

Foreign Intelligence Surveillance Act of 1978 ........................................................................ 15

**Other Authorities**

House Report Rep. No. 95-1283, pt. 1 (1978) ................................................................ 14, 15

## <u>INTRODUCTION</u>

Defendants Jovan Vavic and Donna Heinel respectfully request that the Court suppress the "consensual wiretap" recordings in this matter.  The government's recent Notice and Motion Regarding Authentication, filed in the companion matter to this case, *United States v. Abdelaziz*, 19-CR-10080-NMG, Dkt. 2099, on August 17, 2021, exposed the fact that the government violated the Electronic Communications Privacy Act in recording the "consensual wiretap" calls and texts in this case—namely, by enlisting the *carrier* to monitor the government's lead cooperator, Rick Singer's, phone for nearly five months *after the court order authorizing the carrier's wiretap expired.*  In particular, the government enlisted the carrier to continue recording after court authorization expired, using the identical technology, pursuant to a  letter dated September 20, 2018.  The letter attached a "consent form" purporting to provide Singer's agreement on September 27, 2018—seven days *after* the date of the letter purporting to transmit the consent—to the monitoring of a particular phone line:  "Target Telephone 1" ending in 8802.

Under the plain and unambiguous terms of the statute, however, a wire "provider" cannot assist in the interception and monitoring absent a (1) court order or (2) special certification— neither of which the government, indisputably, obtained here.  Moreover, even if Singer's "consent" were sufficient to permit the carrier to monitor his phone after the court order authorizing the wiretap expired, the government obtained permission to monitor the *wrong* line: "Target Telephone 1" ending in 8802.

For each of these independent reasons, this Court should suppress the "consensual wiretap" calls in this matter.

## BACKGROUND

As set forth in the discovery, Judge Burroughs authorized four wiretaps in this matter pursuant to 18 U.S.C. § 2510 *et seq*.  Wiretap applications were sworn before Judge Burroughs and orders were issued on the following dates: June 5, 2018; July 3, 2018; August 2, 2018; and August 30, 2018.

On October 2, 2018, the government filed an application to seal the last set of recordings and postpone the inventories.[1]  That application (attached hereto as Exhibit A) stated:

> The monitoring of TARGET TELEPHONE 1 began on August 30, 2018 and *ceased at midnight of September 27, 2018*.  The government's investigation of this matter continues in that SINGER is now cooperating with investigators and *he is placing consensual calls* to various target subjects.

*Id.* (emphases added).  Thus, as of midnight of September 27, 2018, the court order authorizing the carrier's wiretap expired, and Singer's "consensual" calls—which includes calls placed to Defendants Vavic and Heinel—commenced.

Contrary to the government's representation, however, the "monitoring of TARGET TELEPHONE 1" by the carrier did *not* cease at midnight of September 27, 2018 when Singer commenced the "consensual" calls as represented.  Rather, the carrier's monitoring continued uninterrupted for nearly five months *after the court order authorizing the carrier's wiretap expired*—and was the means by which Singer's "consensual" calls were recorded.  The government's submission, however, fails to advise the court that Singer was not "placing consensual calls" in the traditional manner—that is, on a government phone, through use of a government-issued recording device, in government offices, or through the use of government-

---

[1] All documents appear to have been filed in No. 18-MC-91232-ABD.  The undersigned do not have access to the full docket but have been provided selected documents.

issued recording software—but rather, that the *carrier* continued uninterrupted with the monitoring, using the identical technology, pursuant to Singer's purported "consent."

In particular, several weeks before the government filed its application to seal before the court, by letter dated September 20, 2018 (attached as Exhibit B), the government separately contacted and requested that the carrier—AT&T—*continue* the wiretap of Singer's TARGET TELEPHONE 1 ending in 8802 past the expiration date of the court's last August 30, 2018 Order based on the representation that Singer had "consented" to such monitoring.  AT&T, in turn, obliged and continued—without court authorization—to conduct electronic surveillance on Singer's phone, using the identical technology, for almost five additional months without a valid order authorizing such monitoring.  All of the "consensual" recordings that are at issue in this case were intercepted in this manner.

Attached to the government's recent Motion for Authentication of Records, filed in the companion matter to this case, *U.S. v. Abdelaziz*, 19-CR-10080-NMG, Dkt. 2099, is the Declaration of FBI Supervisory Special Agent Jaamal C. King, who is a member of the Telecommunications Intercept & Collection Technology Unit in Quantico, VA.  Agent King's affidavit (attached as Exhibit C) confirms that the "wire" was up on Singer's phone—TARGET TELEPHONE 1 ending in 8802 *from June 5, 2018 to March 14, 2019*—and thus that it continued uninterrupted after the August 30, 2018 court Order expired—despite the government's representation that "monitoring ceased at midnight of September 27, 2018."  *Id.* at para. 7 ("The sessions present in the collection system span the date range of 6/5/2018 – 3/14/2019.").

In particular, as Agent King explained:

The authorized surveillance in this case *includes those collections performed through the assistance of a wireless telecommunications service provider*

> (Provider) pursuant to the Communications Assistance for Law Enforcement Act (CALEA). CALEA requires providers to have the ability to perform electronic surveillance *pursuant to a court order or other lawful authorization*. Under the CALEA model, *the provider performs the authorized intercept while providing the communication to law enforcement for collection.*

*Id.* at para. 3 (emphases added). Thus, AT&T—not law enforcement—monitored TARGET TELEPHONE 1 ending in 8802 after the August 30, 2018 court Order expired, through March 14, 2019, and provided the recordings to the government.

Although Agent King's declaration states that interceptions can only be made pursuant to a (1) "court order" or (2) "lawful authorization," the government's letter to AT&T was neither. The letter—which was dated September 20, 2018, although it is unclear when it was actually sent—is titled "Consensual Monitoring of Wireless Phone by Law Enforcement" and states, in part:

> Kindly accept this correspondence as confirmation of representations made by the Department of Justice (DOJ) and the Federal Bureau of Investigation (FBI) regarding the consensual monitoring of mobile phones for law enforcement purposes pursuant to 18 U.S.C. § 2511(2)(c). The specific phone referenced in this letter for AT&T's assistance in conducting consensual monitoring is an AT&T cellular telephone assigned telephone number [ ] 8802.
>
> …
>
> After a thorough review of current applicable law, it is the position of the DOJ/FBI that an order is not required when a party to a communication consents to the monitoring, even when that phone used is inherently mobile; however, since DOJ/FBI also recognizes the rights of third parties should be protected, the consenting party will be required to read and sign a statement pledging that the phone shall not be used by any other party. . . . Thank you for your anticipated cooperation in this matter.

*See* Ex. B.

The government's letter also attached a "Consent and Acknowledgment" that purported to have been executed by Rick Singer on September 27, 2018—in other words, seven days *after*

the purported date of the government's September 20 letter.[2]  That form (attached as Exhibit D)

stated, in part:

> I consent to the interception and recording of any and all communications made
> by me over all telephones, cellular or otherwise, *provided to or made available to
> me by law enforcement agents in connection with actions taken by me in
> connection with law enforcement agents.*

(emphasis added).  Accordingly, Singer's consent only applied to phones "provided to or made

available to" him *by law enforcement* in connection with law enforcement investigations.  Based

on the plain language of this form, his consent did not extend to his personal phone.

The FBI did provide Singer with a phone, but the FBI-provided phone was unmonitored.

*See* Exhibit E (March 13, 2020 at 3-4) (describing these various phone lines).  Singer was

instructed to use the FBI-provided phone (which former AUSA Rosen appeared to refer to as a

"burner") when speaking with the prosecution team *precisely because those phone calls would

not be recorded.  See id.*

However, the telephone that the government asked AT&T to monitor based on Singer's

purported "consent"—Target Telephone 1 ending 8802—*was Singer's personal phone*.

Although the government had *not* in fact obtained Singer's consent to monitor his personal

phone, Target Telephone 1 ending 8802, the government misinformed AT&T—instead

instructing the carrier that there was written consent to monitor the phone number ending in 8802

when in fact there was no such consent. AT&T's agreement to continue the electronic

surveillance for five months past the expiration of the court Order was, in turn, predicated on this

misrepresentation about the purported consent for the at-issue line.

---

[2] The undersigned do not know why the letter was backdated or when the letter was actually sent.

## ARGUMENT

I.    **Regardless of Consent, A Wire "Provider" Cannot "Assist" Law Enforcement in Monitoring Absent A Court Order Or Special Certification**

Section 2511 of the Electronic Communications Privacy Act criminalizes the interception of telephone calls except under expressly delineated circumstances. *See* 18 U.S.C. § 2511(1)(a) ("*Except as otherwise specifically provided in this chapter* any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).") (emphasis added).

Subsection (2)(a)(ii) prescribes the exclusive circumstances under which "*providers* of wire or electronic communication service"—here, AT&T—are lawfully permitted to "provide information, facilities, or technical assistance" *to* "*persons authorized by law* to intercept wire, oral, or electronic communications or to conduct electronic surveillance"—here, the prosecution team. 18 U.S.C. § 2511(2)(a)(ii) (emphasis added).  Specifically, one of the two following express preconditions must be satisfied:

> "(A) a court order directing such assistance or a court order pursuant to section 704 of the Foreign Intelligence Surveillance Act of 1978 signed by the authorizing judge, or
>
> (B) a certification in writing by a person specified in section 2518(7) of this title or the Attorney General of the United States that no warrant or court order is required by law, that all statutory requirements have been met, and that the specified assistance is required[.]" *Id.*

It is undisputed here that neither was met.  Instead, the government's September 20, 2018 letter invoked subsection (2)(c) of 18 U.S.C. § 2511—not subsection (2)(a)(ii)—and relied solely on the premise that it had obtained Singer's "consent."  Even if this "consent" were valid for the line that was actually recorded, "Target Telephone 1" ending in 8802—which it was not, as discussed below in Section II—it at most authorized *law enforcement to* intercept Singer's

telephone calls.  *See* 18 U.S.C. § 2511(2)(c) ("It shall not be unlawful under this chapter for a *person acting under color of law* to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.") (emphasis added).

To take the further step of enlisting *the provider* to "provide information, facilities, or technical *assistance*" *to law enforcement* in this interception process, 18 U.S.C. § 2511(2)(a)(ii) unambiguously required a court order or special certification. This mandate is clear from the plain language of the statute, the structure of its provisions, and its clear legislative history.

In short, as Agent King acknowledged, wire providers can assist the government in intercepting and monitoring telephone calls—provided that it is "pursuant to a court order or other lawful authorization." *See* Ex. C at para. 3.  Because the government's September 20, 2018 letter was neither, the "consensual wiretaps" of Singer's telephone calls were obtained in violation of the law.  Consequently, these recordings must be suppressed.

> **A.   The Unambiguous Plain Language of 18 U.S.C. § 2511 Requires Either a Court Order or Special Certification For a "Provider" to "Assist" Law Enforcement**

"Statutory interpretation begins with the language of the statute," which must be understood to carry its "plain and ordinary meaning."  *In re Hill*, 562 F.3d 29, 32 (1st Cir. 2009). If that meaning "produces a plausible (though not inevitable) result, that is generally the end of the matter."  *Id*.

The plain language of 18 U.S.C. § 2511(2)(a)(ii) unambiguously authorizes wire "providers" to "provide information, facilities, or technical assistance" to law enforcement in intercepting a wire communication *only* if the provider has been given either (1) a court order, or (2) a special certification pursuant to section 18 U.S.C. § 2518 or by the Attorney General.  This is not only a "plausible" interpretation, it is the *only* rational construction of this statutory text.

11

On its face, there is no exception for a law enforcement request where consent is provided

pursuant to 18 U.S.C. § 2511(2)(c).  *See In re Application of United States*., 128 F. Supp. 3d 478,

482 (D.P.R. 2015) ("Of the two Title III provisions cited by the government, § 2511(2)(a)(ii)

authorizes *providers to furnish assistance* in accordance with a court order or a certification . . . .

§ 2511(2)(c) simply *authorizes law enforcement* to conduct wiretaps without court approval

where permission is given by one party to the communication.") (emphases added).  *Cf.  United

States v. Rodriguez*, No. 17-CR-10066-IT, 2018 WL 988054, at *4 (D. Mass. Feb. 20, 2018) ("It

is for the *court*, and *not the service provider*, to decide whether interception is warranted.")

(emphases added); *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1127 (11th Cir. 2004)

("[S]ection 2511(2)(a)(ii) provides that a *narrow* category of interceptions, disclosures, and uses

of the electronic communications of others is lawful.") (emphasis added).

In this case, no court order was obtained.  Nor was any statutory certification provided—

or purported to be provided.  Therefore, AT&T was not authorized to assist law enforcement by

maintaining the wire on Singer's personal phone after lawful court authorization expired,

whether or not Singer provided adequate consent.  The government's letter's pronouncement that

"after a thorough review of current applicable law, it is the position of the DOJ/FBI that an order

is not required when a party to a communication consents to the monitoring," cannot change the

plain language of the statute.  And because the language of the statute is unambiguous, the

Court's analysis need go no further. *See Hill*, 562 F.3d at 32.

### B.     The Structure of 18 U.S.C. § 2511 Confirms the Requirements for "Providers" to "Assist" Law Enforcement

"A court's lodestar in interpreting a statute is to effectuate congressional intent."  *City of

Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020).  To that end, the "context surrounding a

statutory provision and the structure of the statutory scheme as a whole often provide useful indicators of congressional intent." *Id*.

Here, the structure of 18 U.S.C. § 2511 confirms—as the plain language of subsection (2)(a)(ii) makes clear—that "consent" is no substitute for the express requirement of a court order or special certification. Section 2511 separates the preconditions for *wire providers to provide assistance to law enforcement* in subsection (2)(a)(ii) from the "consent" clause for *a person acting under color of law* in subsection (2)(c). That provision states:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. 18 U.S.C. § 2511(2)(c).

*Id.*

Section 2511(2)(c) allows law enforcement officers and confidential informants to use traditional methods of interception—such as government phones, tape recording devices, and tape recording software—to monitor and intercept telephone calls where only one party to the phone call consents to such monitoring and interception. It would have been entirely appropriate for the government to rely on this provision if they had provided Singer with a government phone and equipped it with a recording device, or even if they permitted Singer to keep his own phone and gave him a recording device to use. But that is not what happened. Instead, the electronic surveillance was done by AT&T at the government's request.

Moreover, the "consent" provision of subsection (2)(c) provides further context for the various requirements of structurally separate, neighboring subsection (2)(a)(ii). Under subsection (2)(a)(ii), *if* a court order or special certification is issued, then a wire provider may *assist* "persons authorized by law" "to intercept wire, oral, or electronic communications." 18 U.S.C. § 2511(2)(a)(ii). Had the government properly obtained Singer's consent, pursuant to

13

section 2511(2)(c), he would have become such a "person[] authorized by law to intercept wire,

oral, or electronic communications"—bringing him within the ambit of section 2511(2)(a)(ii).

In other words, Singer's consent would have merely satisfied the "persons authorized"

criteria for the government to enlist AT&T's assistance.  For this reason, too, such consent

cannot replace section 2511(2)(a)(ii)'s distinct requirement of either a court order or written

certification, as this would render this statutory clause ("persons authorized by law") surplusage.

*See Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000) ("A

reading that renders a statutory provision surplusage is disfavored.")  The government's contrary

position thus fails when the structure of the statute as a whole is considered too.

## C. The Legislative History Likewise Confirms the Requirements for "Providers" to "Assist" Law Enforcement

Although the plain text and structure of the statute obviate the need to turn to the

legislative history of 18 U.S.C. § 2511, *see Hill*, 562 F.3d at 32, this authority confirms that

Congress specifically intended to impose a requirement that *wire providers* receive either a court

order or written certification before becoming lawfully authorized to assist "persons authorized

by law" in a wire interception.

According to a contemporaneous House Report around the time of the statute's

enactment:

> This provision would … require the Government to provide a copy of the Attorney
> General certification [of emergency need] or portions of the court order and other
> information to the person rendering assistance. . . . *Requiring the court order or
> certification to be presented before the assistance is rendered . . . . places an
> additional obstacle in the path of unauthorized surveillance activity . . . .* In the
> past, phone companies have been subjected to civil suits for rendering assistance to
> the Government, whether or not a court order was involved. The committee
> provision is intended to hold harmless the phone company and others *so long as the
> assistance is in accordance with the terms of the order or certification . . . .* The
> Court order or certification must indicate the period of time during which the
> provision of information, facilities or technical assistance is authorized and must
> specify the information, facilities or technical assistance required.  [These

requirements] will eliminate any doubts the party providing assistance might harbor concerning what is required of him and what are the limits of his authority.

H.R. Rep. No. 95-1283, pt. 1, at 98-99 (1978) (emphasis added).[3]  In other words, provides are *only* authorized to assist law enforcement in monitoring phone lines where they receive either a court order or written certification.

There is good reason for this rule—even where the owner of the device has already consented to such interception.  Indeed, there is an enormous difference between traditional methods of consensual recording and a so-called "consensual wiretap."  With traditional methods, the recording is limited by the fact that either the government or the informant must physically record each call.  Usually this is either done at the government's offices, or the informant is given a recording device to use when he speaks with persons of interest.  The informant can—in effect—revoke consent whenever he would like because he can simply stop recording or stop cooperating with law enforcement.  And there is hardly any risk that the recordings will capture a phone call in which neither party has consented to recording—which would be illegal—if the informant let someone else use his phone, because either the informant or the government control each recording.

When law enforcement has the phone company's technical assistance, by contrast, they are granted the "keys to the castle":  The phone company can set up an actual, traditional

---

[3] This is not an isolated reference in the legislative history.  Elsewhere, the House Report further states that the statutorily prescribed "minimization procedures" accompanying a wiretap "must be read in conjunction with the bill's conforming amendment to 18 U.S.C. 2511(2)(a)(ii), contained in Title II of the bill. That amendment requires that before any person provides such information, facilities or technical assistance to persons authorized by law to conduct electronic surveillance, that officer is required to furnish to the person rendering the assistance either an order signed by the authorizing judge directing such assistance or, in the case of surveillance undertaken under chapter 119 or the Foreign Intelligence Surveillance Act in which a prior order is not required, such as an emergency surveillance, certification under oath by a person specified in chapter 119 or the Attorney General that any applicable statutory requirements have been met." *Id*. at 81-82.

wiretap, intercept all calls, and provide the recordings directly to law enforcement with little or no informant interaction and no court authorization. *See generally* Ex. C. In Singer's case, this meant that electronic surveillance was ongoing for nearly five months after the last court order expired, capturing *every* single call and text message going in and out of Singer's cell phone. Unlike a traditional wiretap, there were no "minimization" procedures and no agent to constantly monitor the line and ensure that non-targets were not being recorded. *See United States v. Lopez*, 300 F.3d 46, 57 (1st Cir. 2002) ("The minimization requirement 'spotlights the interest in confining intrusions as narrowly as possible so as not to trench impermissibly upon the personal lives and privacy of wiretap targets and those who, often innocently, come into contact with such suspects."). Moreover, the wiretapping could have conceivably continued in perpetuity, at the government's say-so, given that AT&T was not provided with an order setting forth "the period of time during which the provision of the information, facilities, or technical assistance is authorized"—as is required by 18 U.S.C. § 2511(2)(a)(ii).

It is easy to see why Congress would demand that, in these circumstances, telephone companies can only provide assistance to law enforcement if they are ordered to do so by the court. The requirement of a court order ensures that law enforcement cannot enlist the assistance of providers to set up intrusive wiretaps simply on a prosecutor's say-so. Congress could have easily imagined a situation in which a rogue agent enlisted the assistance of the telephone company to set up a wire, stating that he or she has legal authority (such as consent) when in fact he or she has no such authority. Without the requirement of a court order, the possibilities for abuse are endless. *See Lopez*, 300 F.3d at 57 (to determine whether government has fulfilled its obligation to minimize unauthorized communications under a "standard of honest effort," courts consider "the nature and complexity of the suspected crimes," "the thoroughness of the

government's precautions to bring about minimization;" and "the *degree of judicial supervision over the surveillance process*") (emphasis added). *Cf. United States v. Hoffman*, 832 F.2d 1299, 1306-07 (1st Cir. 1987) ("[I]n a society which values privacy and the rights of the individual, wiretapping is to be distinctly the exception—not the rule.").

The necessity of having a judicial officer mediate between law enforcement and the provider—even where there is consent under 18 U.S.C. § 2551(2)(C)—is present in this very case.  Here, the government told AT&T that Singer provided consent to monitor his personal phone number—"Target Telephone 1" ending in 8802—but in fact the consent the government procured (and provided to AT&T as an attachment to its September 20, 2018 letter) was *not* for this line—but rather for the recording of a phone *provided by law enforcement.*  If the government had followed proper procedures and brought the matter to the court before enlisting AT&T's assistance, surely Judge Burroughs would have recognized the error and ordered it to be corrected before the government made a false representation about Singer's consent to AT&T.  The system set up by Congress—with a judicial "check" on the government's ability to compel providers to provide assistance—would have worked as intended.

To be sure, it would not have been difficult for the government to obtain a court order compelling AT&T to continue to provide assistance in intercepting Singer's calls.  Indeed, when the government went back to Judge Burroughs to seal the lawfully-acquired wiretap tapes, there is no reason that it could not have filed a simple application for a court order explaining that Singer had consented, attaching the consent form, and providing a short background statement on what the government wished to gain from the interceptions.  If Singer had provided valid consent, the government need not have followed the entire 18 U.S.C. § 2518 process.  *See In re Application of United States*., 128 F. Supp. 3d at 482 ("Notably, while § 2511(2)(a)(ii) authorizes

providers to furnish assistance *upon a court order*, it does not explicitly state that the order be one pursuant to § 2518.") (emphasis added).  Indeed, "court orders under § 2511(2)(a)(ii) are distinct from interception orders pursuant to § 2518, which must include additional information." *Id*.

***

For all of the foregoing reasons, the requirement of a court order is clear from the plain language of the statute, the structure of its provisions, and its legislative history.  At the very least, even if the language of section 2511(2)(a)(ii) were plausibly ambiguous with respect to the requirements for wire providers—and, for the reasons discussed, it is not—the foundational principle in criminal law that ambiguity concerning the application of criminal statutes should be resolved in favor of lenity would militate in favor of the construction advanced here.  *See United States v. Ernst*, 502 F. Supp. 3d 637, 652 (D. Mass. 2020) ("[T]he court is guided by the foundational principle in criminal law that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'") (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)).  As described below in section III, the remedy here is therefore suppression of the "consensual" recordings.

## II.   Even If Consent Sufficed, the Government Did Not Obtain Singer's Consent for the At-Issue Line

The government committed not one but two fatal errors in the way it handled the "consensual" wiretap—each of which renders the unlawfully seized recordings inadmissible at trial.

As discussed above, the "consent form" that Singer signed permitted law enforcement to monitor any phone "*provided to or made available to me by law enforcement agents* in connection with actions taken by me in connection with law enforcement agents [sic]."  *See* Ex.

C (emphasis added).  But the government had AT&T monitor Singer's personal iPhone—
"Target Telephone 1" ending in 8802—which was *not* the phone that was provided to him by
law enforcement.  *See* Ex. E at 3-4.  In fact, the government had it backwards.  It provided Singer
with a mobile phone but did *not* monitor the law enforcement phone, and specifically directed
Singer to use the *unmonitored* phone to call law enforcement precisely because there would be
no record of those calls.  *See id.  In other words, the phone for which there was not consent was
monitored, and the phone for which there was consent was not monitored.*

   Even if the government had obtained the required court order, the "consensual wiretap"
thus independently violated Title III because there was no valid consent.  The fact that Singer did
not consent to the monitoring of his personal phone is confirmed by a letter the government
wrote to counsel (and to Magistrate Judge Kelley) on February 26, 2020 (attached as Exhibit F).
In that letter, the government asserted that the infamous iPhone "notes" in which Singer
recounted that the agents encouraged him to lie were not provided to defense counsel as
*Brady*[4]—a decision that Judge Gorton later found, in the companion case, was "irresponsible and
misguided"[5]—because "the government believed the notes were privileged."  Clearly, even the
government had mistaken which telephone Singer had given consent to monitor.  After all, if
Singer had actually consented to the government monitoring his personal iPhone, the
government's assertion that anything on that phone was privileged would be patently absurd.

---

[4] Singer's October 2, 2018 notes, produced by the government in discovery on February 26,
2020, together with this letter, reflect that members of the prosecution team reportedly berated
and bullied him to force him to agree with the government's false narrative that "everyone bribed
the schools"; instructed him to lie and entrap parents and coaches; and directed him to target a
particular individual who they desired to "nail" "at all costs." *See* Jovan Vavic's Memorandum
in Support of Supplemental Motion to Dismiss the Second Superseding Indictment, Dkt. 607 at
10 n.3.

[5] *See U.S. v. Abdelaziz*, 19-CR-10080-NMG, Dkt. 1169 at 8.

In short, Singer did not consent to the monitoring of his personal iPhone—"Target Telephone 1" ending in 8802—which separately mandates suppression of the "consensual" recordings in this matter, as set forth below.

### III.     The Remedy is Suppression

In light of the foregoing, Singer's "consensual wiretaps" from September 28, 2018 to March 14, 2019 were tainted by violations of 18 U.S.C. § 2510 *et seq.*  Defendants are "aggrieved persons" because they were parties to such wires which were "unlawfully intercepted," 18 U.S.C. § 2518(10)(a)(i).  The government's failure to obtain a court order authorizing the wiretap as required by 2511(a)(ii) is a failure to satisfy a statutory requirement that "directly and substantially implement[s] the Congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device."  *United States v. Giordano*, 416 U.S. 505, 527 (1974).  Thus, the unlawfully obtained recordings must be suppressed under 18 U.S.C. § 2515. *See Giordano*, 416 U.S. at 524-29.

At a minimum, to the extent that the Court determines that there is a material dispute of fact on the issue of consent, and that the issue of consent will be dispositive of this motion, the Court should hold an evidentiary hearing.

### <u>CONCLUSION</u>

For the reasons set forth above, Defendants Jovan Vavic and Donna Heinel respectfully request that the Court suppress the "consensual wiretap" recordings on which they were intercepted.

At a minimum, Defendants respectfully request that the Court hold an evidentiary hearing on the issue of consent.

Dated: September 1, 2021                    Respectfully submitted,


                                           */s/ Stephen G. Larson*
                                           Stephen G. Larson (CA State Bar No. 145225)
                                           slarson@larsonllp.com
                                           (Admitted *pro hac vice*)
                                           Koren L. Bell (CA State Bar No. 268614)
                                           kbell@larsonllp.com
                                           (Admitted *pro hac vice*)
                                           Paul A. Rigali (CA State Bar No. 262948)
                                           prigali@larsonllp.com
                                           (Admitted *pro hac vice*)
                                           **LARSON LLP**
                                           555 South Flower Street, Suite 4400
                                           Los Angeles, California 90071
                                           (213) 436-4888

                                           Irwin B. Schwartz (BBO# 548763)
                                           ischwartz@blaschwartz.com
                                           Nicholas R. Cassie (BBO# 672698)
                                           ncassie@blaschwartz.com
                                           BLA Schwartz, PC
                                           One University Ave., Suite 302B
                                           Westwood, Massachusetts 02090
                                           Phone: 781-636-5000
                                           Fax: 781-636-5090

                                           *Counsel for Defendant JOVAN VAVIC*




                                           */s/ Nina Marino*
                                           NINA MARINO
                                           (Admitted *pro hac vice*)
                                           JENNIFER LIESER
                                           KAPLAN MARINO, P.C.
                                           9454 Wilshire Blvd., Ste. 902
                                           Beverly Hills, CA 90212
                                           Telephone:  (310) 557-0007
                                           marino@kaplanmarino.com

                                           *Counsel for Defendant Dr. Donna Heinel*

## **LOCAL RULE 7.1(A)(2) CERTIFICATION**

I hereby certify that counsel for the defendants conferred with counsel for the government in an attempt to resolve or narrow the issues raised by this motion.   The government opposes this motion.

*/s/ Stephen G. Larson*
Stephen G. Larson

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on September 2, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Stephen G. Larson*
Stephen G. Larson

.