UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>      v. )<br>)<br>DONNA HEINEL, )<br>)<br>          Defendant )| No. 19-cr-10081-IT |

**GOVERNMENT'S OPPOSITION TO DEFENDANT DONNA HEINEL'S MOTION TO DISMISS COUNTS 2, 3, 10-15, AND 18 OF THE SECOND SUPERSEDING INDICTMENT**

Defendant Donna Heinel has moved to dismiss Counts 2, 3, 10-15, and 18 of the Second Superseding Indictment based on prosecutorial vindictiveness, but points to no direct evidence of prosecutorial animus and, to try to establish a presumption of vindictiveness, points only to circumstances in which the Supreme Court and First Circuit have refused to find such a presumption. Accordingly, as detailed below, Heinel has not established that a reasonable likelihood that the government's pre-trial addition of charges was vindictive, and her motion should be denied.

**I.     RELEVANT BACKGROUND**

On March 5, 2019, the Grand Jury charged the defendant with one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

Between March 5, 2019 and October 22, 2019, the government met with, interviewed, took testimony from, or obtained evidence from numerous witnesses, targets, and subjects. Pertinent to the defendant's motion, interviewees included, without limitation, Heinel's colleagues at the University of California who described her role in handling student profiles (including those known to the government to be false); co-conspirators who worked with William "Rick" Singer to create fake athletic profiles for Heinel (among others) and who created invoices that covered

Singer's direct bribe payments to Heinel's purported consulting service; and Singer, who provided details on Heinel's involvement in the bribery scheme and further information about his operation.[1]

On April 1, August 5, and October 10, 2019, the defendant's counsel engaged in unsuccessful plea discussions with the government.[2]

On October 15, 2019, the defendant moved to dismiss the indictment.

On October 22, 2019, the Grand Jury returned a Superseding Indictment, charging the defendant with racketeering conspiracy, mail and wire fraud conspiracy, conspiracy to commit federal programs bribery, wire fraud, and mail fraud, in violation of 18 U.S.C §§ 1962(d), 1349, 1343 and 1346, and 1341 and 1346, respectively.

On September 1, 2020, the Grand Jury returned a Second Superseding Indictment, which added no new charges against the defendant.[3]

On November 23, 2020, the Court ruled on the pending motion to dismiss.

On August 16, 2021, the defendant moved to dismiss all counts except the original racketeering count based on prosecutorial vindictiveness.

---

[1] The information provided here is limited in the interest of brevity, because the government submits that the defendant has not met her burden to provide evidence creating a presumption of vindictiveness. Should the Court decide otherwise, the government will provide additional factual information to the Court.

[2] The defendant's counsel states that the government repeatedly told her on three different days that the defendant is "very guilty, that the evidence is very strong against her, and that she should plead guilty and cooperate with the government against USC." In fact, the government gave a reverse proffer with exhibits to show the defendant the pertinent evidence establishing her guilt beyond a reasonable doubt and discussed with counsel, in a preliminary manner only, the framework for a potential guilty plea. The government did not ask the defendant to cooperate against the victim, the University of Southern California.

[3] The defendant acknowledges that the Second Superseding Indictment is immaterial to her claim of vindictive prosecution. See Def.'s Mot. to Dismiss at 3. (Dkt. No. 759.)

On August 31, 2021, the United States moved to dismiss the racketeering conspiracy charge against all defendants.

## II.    LEGAL STANDARD

A defendant alleging prosecutorial vindictiveness must either show that the prosecutor "harbored genuine animus" that caused a prosecution of the defendant or, lacking direct evidence of such animus, create a rebuttable presumption of vindictiveness by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness." *United States v. George*, 839 F. Supp. 2d 430, 441 (D. Mass. 2012) (citations omitted).

## III.   ARGUMENT

The defendant claims that the government charged her with additional crimes in the Superseding Indictment to punish her for exercising her right to go to trial and for challenging the sufficiency of the original racketeering charge against her.  To proceed, she must establish actual animus or a presumption of it that the government cannot rebut.  She has done neither.

### A.    There is no Evidence of Actual Animus.

To establish actual vindictiveness, a defendant must prove objectively that the prosecutor's charging decision was a "direct and unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal right." *United States v. Goodwin*, 457 U.S. 368, 384, n.19, n.11 (1982).  For example, a defendant could show that a prosecutor actually said that he or she would bring a new charge to punish the defendant for exercising his legal right. *See United States v. Campbell*, 410 F.3d 456, 462 (8th Cir. 2005).  This showing, however, is "exceedingly difficult to make," *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C.Cir.1987), particularly because a prosecutor can threaten a defendant with a more severe charge to induce a guilty plea

and then carry out the threat without violating Due Process, *see Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978). Here, there is no evidence of animus, and the defense does not allege any.

    **B.**  **A Presumption of Vindictiveness Does Not Apply.**

    To establish a presumption of prosecutorial vindictiveness, the defendant must show that the circumstances of his case pose a "realistic likelihood" of vindictiveness that would be applicable in all cases with similar circumstances. *Blackledge v. Perry*, 417 U.S. 21, 27 (1974). To make the determination, a court may "examine the prosecutor's stake in deterring the defendant's exercise of the constitutional right, and actions taken by the prosecution." *United States v. Lopez*, 854 F. Supp. 41, 45 (D.P.R. 1994) (citation omitted).

    As this Court has recognized elsewhere, the presumption of vindictiveness is especially hard to establish in the pretrial context because the prosecutor has broad discretion to determine what crimes to prosecute. *United States v. Kesner*, Civil Action No. 1:15-cr-10323-IT-2, 2017 U.S. Dist. LEXIS 40530, at *7-8 (D. Mass. Mar. 21, 2017) (Talwani, J.) (citing *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997)); *see also Goodwin*, 457 U.S. at 382-83 (1982) ("[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."); *United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009) ("It is difficult to make such a showing pretrial, however, in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith."); *United States v. Jenkins*, 537 F.3d 1, 5 (1st Cir. 2008) (holding that a "presumption of vindictiveness is not warranted" when a prosecutor adds an enhancement after a defendant refused to plead guilty); *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (The "presumption of vindictiveness does not apply to pretrial decisions by

the prosecution"); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) ("[T]he presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions. *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) ("A presumption of vindictiveness generally does not arise in a pretrial setting." (citation omitted)).

Notably, the Supreme Court has rejected the presumption of vindictiveness when, pretrial, a prosecutor decides to charge a defendant with additional crimes after a defendant refuses to plead guilty. *See Bordenkircher,* 434 U.S. at 365. As the Supreme Court explained, "An initial indictment--from which the prosecutor embarks on a course of plea negotiation--does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Goodwin*, 457 U.S. at 380. Moreover, as the *Goodwin* Court explained, defendants routinely file pretrial motions to dismiss, to suppress evidence, to obtain discovery, or to "challenge the sufficiency and form of an indictment." *Id*. Therefore, the Court concluded, "It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." 457 U.S. at 381-82.

If a defendant successfully establishes a presumption of vindictiveness, the showing required to overcome it is "minimal—any objective evidence justifying the prosecutor's actions will suffice." *United States v. Gibson*, No. 15-cv-10323-IT, 2016 U.S. Dist. LEXIS 185219, at *16 (D. Mass. Aug. 11, 2016) (quoting *United States v. Safavian*, 649 F.3d 688, 694 (D.C. Cir. 2011)). A change in trial strategy to refocus an indictment on conduct outside the scope of a defendant's anticipated defense can be an objective reason that overcomes a presumption of vindictiveness. *See United States v. Safavian*, 649 F.3d 688, 694 (D.C. Cir. 2011).

the prosecution"); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) ("[T]he presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions. *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) ("A presumption of vindictiveness generally does not arise in a pretrial setting." (citation omitted)).

the prosecution"); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) ("[T]he presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions. *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) ("A presumption of vindictiveness generally does not arise in a pretrial setting." (citation omitted)).

Notably, the Supreme Court has rejected the presumption of vindictiveness when, pretrial, a prosecutor decides to charge a defendant with additional crimes after a defendant refuses to plead guilty. *See Bordenkircher,* 434 U.S. at 365. As the Supreme Court explained, "An initial indictment--from which the prosecutor embarks on a course of plea negotiation--does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Goodwin*, 457 U.S. at 380. Moreover, as the *Goodwin* Court explained, defendants routinely file pretrial motions to dismiss, to suppress evidence, to obtain discovery, or to "challenge the sufficiency and form of an indictment." *Id*. Therefore, the Court concluded, "It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." 457 U.S. at 381-82.

If a defendant successfully establishes a presumption of vindictiveness, the showing required to overcome it is "minimal—any objective evidence justifying the prosecutor's actions will suffice." *United States v. Gibson*, No. 15-cv-10323-IT, 2016 U.S. Dist. LEXIS 185219, at *16 (D. Mass. Aug. 11, 2016) (quoting *United States v. Safavian*, 649 F.3d 688, 694 (D.C. Cir. 2011)). A change in trial strategy to refocus an indictment on conduct outside the scope of a defendant's anticipated defense can be an objective reason that overcomes a presumption of vindictiveness. *See United States v. Safavian*, 649 F.3d 688, 694 (D.C. Cir. 2011).

the prosecution"); *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001) ("[T]he presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions. *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) ("A presumption of vindictiveness generally does not arise in a pretrial setting." (citation omitted)).

Notably, the Supreme Court has rejected the presumption of vindictiveness when, pretrial, a prosecutor decides to charge a defendant with additional crimes after a defendant refuses to plead guilty. *See Bordenkircher,* 434 U.S. at 365. As the Supreme Court explained, "An initial indictment--from which the prosecutor embarks on a course of plea negotiation--does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Goodwin*, 457 U.S. at 380. Moreover, as the *Goodwin* Court explained, defendants routinely file pretrial motions to dismiss, to suppress evidence, to obtain discovery, or to "challenge the sufficiency and form of an indictment." *Id*. Therefore, the Court concluded, "It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." 457 U.S. at 381-82.

If a defendant successfully establishes a presumption of vindictiveness, the showing required to overcome it is "minimal—any objective evidence justifying the prosecutor's actions will suffice." *United States v. Gibson*, No. 15-cv-10323-IT, 2016 U.S. Dist. LEXIS 185219, at *16 (D. Mass. Aug. 11, 2016) (quoting *United States v. Safavian*, 649 F.3d 688, 694 (D.C. Cir. 2011)). A change in trial strategy to refocus an indictment on conduct outside the scope of a defendant's anticipated defense can be an objective reason that overcomes a presumption of vindictiveness. *See United States v. Safavian*, 649 F.3d 688, 694 (D.C. Cir. 2011).

Heinel fails to establish a presumption of vindictiveness because she alleges only:

1. The government added charges after plea negotiations failed and the defendant filed a motion to dismiss (Def.'s Mem. at 7);

2. The additional charges were not based on new evidence (*id.*);

3. The additional charges were more severe (*id.* at 9-10); and

4. Defendants who pleaded guilty were not charged with similar counts (*id.* at 11-13).

Heinel's motion must therefore fail because, as detailed below, longstanding, binding precedent forecloses each of these as a basis for presuming vindictiveness.

First, the addition of charges after plea negotiations collapse or after the filing of a motion to dismiss does not suggest vindictiveness. In *Bordenkircher*, the Supreme Court declined to presume vindictiveness even when a prosecutor threatened a harsher charge if a defendant did not plead guilty. 434 U.S. at 365. As the First Circuit has explained, "[T]he mere bringing of a new indictment with added counts is not in itself vindictive behavior, nor does it raise a presumption of vindictiveness[.]" *United States v. Young*, 955 F.2d 99, 108 (1st Cir. 1992) (citing *Goodwin*, 457 U.S. at 382); *see also Jenkins*, 537 F.3d at 4 (finding no prosecutorial vindictiveness where the prosecutor filed a section 851 enhancement information after plea negotiations were unsuccessful). The defendant's argument that the government added charges after she filed a motion to dismiss is of no moment. As noted above, in *Goodwin*, the Supreme Court recognized that "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates." 457 U.S. at 368. Moreover, to the extent the defendant's motion raised novel arguments, those very

arguments justified the government's addition of charges not subject to challenge. In *Young*, where a defendant moved to dismiss an embezzlement charge based on unconstitutional vagueness and the government responded with a superseding indictment adding four counts of mail fraud, the First Circuit found that such a motion to dismiss "offers an obvious, and legitimate, reason why the prosecutor would want to add other, less controversial, charges to the indictment." 955 F.2d at 108.[4]  No cases cited by the defendant are to the contrary.

Second, the defendant is wrong that vindictiveness can be presumed when new charges rely on known evidence. *Goodwin* expressly recognized that "just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." 457 U.S. at 380.  The *Goodwin* Court based its ruling directly on *Bordenkircher* in which the Court found no vindictiveness even though "the prosecutor was in possession of this evidence at the time the original indictment was obtained, and [] the prosecutor sought the additional charge because of the accused's refusal to plead guilty to the original charge. *Id*. at 377.  Here, the defendant merely points out that the government had the evidence to charge RICO predicates from the beginning but only did so after plea negotiations failed. As the First Circuit has noted, "[T]his fact alone is insufficient to establish that the Government later filed the

---

[4] In *United States v. Schiavo*, the First Circuit found "deficient as a matter of law" allegations of vindictiveness where a superseding indictment was returned soon after the government lost an appeal on the suppression of the currency and the indictment was not based on the discovery of new evidence, noting "[t]he filing of a pretrial motion, regardless of its successful outcome, and the failure of plea negotiations are routine events unlikely to provoke a prosecutor to 'seek to penalize and deter.'" No. 95-1437, 1996 U.S. App. LEXIS 22176, at *20-21 (1st Cir. Aug. 19, 1996).

superseding indictments to punish [a defendant]." *Bucci*, 582 F.3d at 114 (citing *United States v. Roach*, 502 F.3d 425, 444-45 (6th Cir. 2007) (same)).[5]

Third, vindictiveness cannot be presumed based solely on increased potential punishment. Again, in *Bordenkircher*, the Court found no vindictiveness when a prosecutor actually threatened a more severe charge if the defendant did not plead guilty and then carried through on the threat, all based on evidence that the prosecutor already had. *See Goodwin*, 457 U.S. at 377. The defendant is also wrong that this case is like *United States v. Ladeau*, 734 F.3d 561 (6th Cir. 2013), in which the prosecutors charged a crime with a higher maximum penalty after losing a suppression issue. Here, the RICO charge and the mail and wire fraud charges all carry the *same* 20-year statutory maximum penalty, and the federal programs bribery charge (18 U.S.C. § 666) has a *lower* 10-year statutory maximum penalty. Moreover, as the Supreme Court has explained, "[T]he Due Process Clause is not offended by all possibilities of increased punishment . . . but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 417 U.S. at 27; *see also Jenkins*, 537 F.3d at 4.

Finally, there is no basis to presume prosecutorial vindictiveness because Heinel has been charged with crimes that other defendants who pleaded guilty did not face. Heinel is not

---

[5]The defendant mistakenly relies on *United States v. Ladeau*, 734 F.3d 561 (6th Cir. 2013), where the Sixth Circuit held that the prosecution was likely vindictive it charged a more serious child pornography crime *after* the defendant prevailed on a motion to suppress that imposed a dramatic burden on the prosecution. Here, by contrast, the government added charges *before* the Court ruled on any pending motion, and as the defendant concedes, the new charges in the Superseding Indictment were "the exact same allegations previously set forth in the original RICO charge." (Def.'s Mem. at 9.) Thus, although in *Ladeau*, the defendant's successful motion to suppress "forced the government to restart its prosecution from square one," here, the defendant's motion to dismiss that was pending at the time of the Superseding Indictment did nothing of the kind. *Ladeau*, 734 F.3d at 570. To the contrary, the government continued directly and without pause, exactly as in *Young* and as anticipated by *Bordenkircher* and *Goodwin*, and this Court's ruling on the motion to dismiss did not set back the substance of the government's case.

similarly situated to all defendants who have been charged in relation to the conspiracy centered on William "Rick" Singer. Heinel was a senior officer at a university who conspired with Singer to admit students in exchange for bribes and then directed and accepted bribe payments for multiple students. Not all defendants engaged in comparable conduct. The defendant's reliance on *Meyer* is thus mistaken. In that case, all of the defendants participated in the same specific event and conducted themselves in an identical manner. 810 F.2d at 1246. By contrast, Heinel engaged in many more instances of fraud than other defendants and did so in a different manner. She was the key insider at USC for the purposes of the charged conspiracy with Singer and took bribes for many students. Singer, effectively Heinel's partner in the scheme, pleaded guilty to racketeering conspiracy (involving predicates implicating Heinel), money laundering conspiracy, conspiracy to defraud the United States, and obstruction of justice, charges that are comparable in severity to the charges against Heinel.

        **C.**       **There Were Objectively Reasonable Justifications For Charging Heinel.**

As a threshold matter, Heinel does not challenge probable cause supporting the charges against her. Neither does she challenge the number of substance counts, *per se*. The prosecutorial decision to bring multiple charges based on a single scheme or conspiracy is not unique or unusual. *Bordenkircher*, 434 U.S. at 364 ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). For example, a single wire fraud conspiracy might comprise numerous individual wires, each of which could be charged as executions of a single scheme to defraud. 18 U.S.C. § 1343. The multiple bribery and wire fraud counts against Heinel are no different and should not raise any concerns for the Court. The decision to charge multiple substantive counts as part of a

9

conspiracy case is ordinarily, as here, a matter of trial strategy, rather than a matter of increasing potential punishment. Under the United States Sentencing Guidelines, the range of possible sentences for multiple, related wire fraud counts is determined in the aggregate based largely on the loss amount and offense characteristics specific to the scheme to defraud. *See* U.S.S.G. §§ 3D1.2(d); 2B1.1.

Heinel principally challenges the timing of the Superseding Indictment and suggests that the government added charges against her based solely on her refusal to take responsibility for her crimes and plead guilty and subsequent filing of a motion to dismiss. Notwithstanding the fact that clear Supreme Court precedents allow the government to add charges after plea negotiations break down, Heinel is factually wrong. Heinel suggests to the Court that the government's investigation was complete by the time the Grand Jury returned the original indictment. To the contrary, this investigation was ongoing, and in the time period between Heinel's indictment and the Superseding Indictment that added the counts she seeks to dismiss, the government conducted numerous interviews of witnesses, gathered and reviewed email and business record evidence, and generally refined and clarified both its factual and legal understanding of this case.

The contrast to *Meyer* is instructive. The *Meyer* court noted that "officials often make charging decisions before analyzing thoroughly a case's legal complexities." 810 F.2d at 1247. In that case, the facts and legal theory at issue were simple and straightforward, making it unlikely that prosecutors had an evolving understanding. *Id.* at 1247. On that basis, the court distinguished *Goodwin*, which "recognized the frequency with which prosecutors must act on (*and later compensate for*) incomplete information or *understanding*." *Id.* (citing *Goodwin*, 457 U.S. at 381). Here, there has been extensive motion practice regarding the contours of RICO law and the definition of property for the purposes of the wire fraud and mail fraud statutes. It is undeniable

that all parties have had to grapple with the legal complexities in this case, particularly as to the RICO charge. The government's decision to add charges during the pendency of, but before any decisions on challenges to the RICO charges was objectively reasonable. As the First Circuit acknowledged in *Young*, the addition of well-known and legally uncontroversial charges is an obvious and justifiable response to legal uncertainty. 955 F.2d at 108; *see also id.* ("If any . . . combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created." (quoting *United States v. Krezdorn*, 718 F.2d 1360 at 1365 (5th Cir. 1983)); *cf. Hardwick v. Doolittle*, 558 F.2d 292, 301 (5th Cir. 1977) (including in a non-exhaustive list of explanations that would negate vindictiveness, "mistake or oversight in the initial action, a different approach to prosecutorial duty by the successor prosecutor, or public demand for prosecution on the additional crimes allegedly committed.").

### IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:/s/Kriss Basil
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KRISS BASIL
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

      I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

      /s/Kriss Basil
      Kriss Basil
      Assistant United States Attorney