UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19-cr-10081-IT |
| | ) | |
| DONNA HEINEL, et al., | ) | |
| | ) | |
| Defendants | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION TO SUPPRESS CONSENSUAL WIRETAP RECORDINGS (DKT. 791)**

The defendants' motion to suppress should be denied because it is untimely and legally meritless given the plain language of Title III.

Incredibly, the defendants claim that they only learned the pertinent facts underlying their motion in mid-August, 2021, when the government filed a Notice and Motion Regarding Authentication in *United States v. Abdelaziz*, 19-cr-10080-NMG (Dkt. 2099). However, as they concede, all of the facts were "set forth in the discovery" in this case (Dkt. 791 at 3), which the defendants received in April 2019. Indeed, by letter, dated April 25, 2019, the government explicitly told the defendants that the discovery included "wiretap and consensual recordings" and "consent forms signed by Singer." That discovery included the consensually recorded phone calls they seek to suppress, the consent form signed by William "Rick" Singer and his attorney that the government provided to AT&T, and the pertinent wiretap filings. Moreover, by letter dated March 13, 2020, the government explained to the defendants the history of the wiretap and consensual recordings in this case. *See* Dkt. 791-1 at 16. The defendants do not identify any fact that they could not have known had they reviewed the discovery in the two and a half years that they have possessed it, and they have no good excuse for not filing their motion by this Court's deadline of August 16, 2021, which the defendants proposed jointly with the government.

In fact, the defendants learned nothing new in August 2021, except that the defendants in *Abdelaziz* were seeking to suppress consensual recordings based on the same flawed interpretation of Title III that Heinel and Vavic now present to this Court.  Their arguments, like those in *Abdelaziz*, necessarily fail given the plain language of 18 U.S.C. §§ 2511(2)(c) and 2511(3)(b)(ii). In those sections, Title III explicitly allows a telecommunications provider to divulge cellular phone communications with the consent of one of the parties to the communication.  The consensual interceptions in this case were routine and lawful.  The defendants' late-filed and legally frivolous motion should be denied.

I.      **RELEVANT BACKGROUND**

        A.      **The Wiretaps and the Consensually Recorded Calls**

On September 21, 2018, law enforcement agents approached Singer based on information gathered from, among other things, four consecutive 30-day wiretaps of his phone number ending in -8802.  The last of those court-authorized wiretaps was set to expire on September 29, 2018.

On September 27, 2018, after conferring with his attorney, Singer signed a consent and acknowledgement form stating: "I consent to the interception and recording of any and all communications made by me over *all telephones*, cellular or otherwise, provided to *or made available to me* by law enforcement agents in connection with actions taken by me in connection with law enforcement agents."  Dkt. 791-1 at 12 (emphasis added).  Singer and his attorney each signed the consent form in the presence of federal agents.  *Id.*  The government provided the signed consent form to Singer's phone provider, AT&T, together with a letter noting that, in accordance with 18 U.S.C. § 2511(2)(c), "consent of one of the parties to a communication is sufficient under the law to permit monitoring without court order."  Dkt. 791-1 at 6.  The letter was inadvertently

dated September 20, 2018, but the consent form was dated September 27, and the consensual interceptions did not begin until after AT&T received the consent form.

On October 2, 2018, in the application to seal the final Title III wiretap and to postpone inventories, the government informed the court that Singer had begun cooperating, that he had consented to the recording of his calls, and that the court-authorized interceptions of his phone that had commenced pursuant to the court's most recent renewal of the wiretap on August 30, 2018, had therefore "ceased at midnight of September 27, 2018" (two days before it was scheduled to expire). Dkt. 791-1 at 2–3. At the direction of law enforcement, Singer proceeded to make consensually recorded calls from his phone to the defendants and others, and the government intercepted and monitored those calls with technical assistance from AT&T. *See id*. at 3 and 8-9.

Based partly on evidence in those calls, the defendants were indicted on March 5, 2019. Dkt. 1. Contemporaneously, defendants in the parallel case (19-cr-10080) were arrested on complaints that detailed some of the consensual interceptions at issue here. On April 25, 2019, the government produced discovery concerning the Title III wiretaps and the consensually recorded calls to Heinel and Vavic. The production included Exhibits A, B, and D to the defendants' motion to suppress: the motion to seal submitted to the Hon. Allison D. Burroughs, the letter submitted to AT&T, and the consent form signed by Singer and his attorney.

**B.      The Court's Deadline for Motions to Suppress**

On February 8, 2021, Chief Magistrate Judge Kelley set a deadline of July 15, 2021, for all discovery motions. On July 30, 2021, the Court ordered the parties to meet and confer and to propose a "briefing schedule for any additional motions that will not delay trial." Dkt. 736. On August 5, 2021, the parties proposed a schedule, and the Court adopted the parties' joint proposal on August 10, 2021, imposing a filing deadline of August 16, 2021 for all motions pursuant to Fed.

R. Crim. P. 12(b), including motions to suppress. Dkt. 751. During a conference on August 10, 2021, the Court also inquired whether there would be any additional motions other than expected motions to dismiss and for severance. On August 16, 2021, the defendants filed the expected motions to dismiss and for severance. Dkts. 758 and 759 and 761 and 762.

On August 31, 2021, the defendants in *Abdelaziz* filed a motion to suppress the consensual recordings. On September 1, 2021, Heinel and Vavic moved for leave to file the instant motion, and after the Court granted leave, they filed it on September 2, 2021.

On September 10, 2021, the court in *Abdelaziz* denied the parallel motion to suppress, holding that the interceptions at issue fall within the consent exception of 18 U.S.C. § 2511(2)(c) and that "[r]egardless of whether AT&T is covered by § 2511(c), a wire provider such as AT&T is a 'person' as that term is defined in 18 U.S.C. § 2510(6) [and thus its] assistance would be encompassed within the exception contained in § 2511(2)(d)." *United States v. Abdelaziz*, No. 19-cr-10080-NMG, Order, slip op. at 4 (D. Mass. Sept. 10, 2021).[1]

## II. ARGUMENT

The defendants' motion to suppress the consensually recorded calls between Singer and the defendants should be denied for at least three reasons. First, it is untimely, and the defendants cannot demonstrate good cause for the delay. Second, Title III expressly exempts consensual interceptions from its scope, and Singer both explicitly and impliedly consented to the interception and recording of his phone calls. Third, suppression is not warranted under the good-faith doctrine.

---

[1] 18 U.S.C. § 2511(2)(d) states, "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception . . . ."

## A.     The Motion Is Untimely and the Defendants Cannot Demonstrate Good Cause

The Court need not and should not consider the defendants' motion to suppress because it is untimely.  Under Fed. R. Crim. P. 12(c)(3), "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."  Such an untimely motion may be considered only if "the party shows good cause" for the delay.  *Id.*  Recently, the First Circuit has affirmed the denial of a motion to suppress as untimely that was filed shortly after the district court's deadline for Rule 12(b) motions passed, even where the defendant presented at least a colorable justification for the delay.  In *United States v. Arias*, Chief Judge Saylor denied the defendant's motion for leave to file a motion to suppress wiretap evidence as untimely where newly-appointed CJA counsel missed the deadline by two weeks.  *See Arias*, No. 13-10263-FDS, Dkt. 226 (D. Mass. May 7, 2015).  In affirming, the First Circuit concluded that the district court correctly "denied [the defendant's] third suppression motion because it had been filed more than two weeks after the previously imposed deadline for making such a finding." *United States v. Arias*, 848 F.3d 504, 513-14 (1st Cir. 2017); *see also United States v. Sweeney*, 887 F.3d 529, 534 (1st Cir. 2018) (affirming denial of motion to suppress as untimely where it was filed shortly before trial); *United States v. Walker-Couvertier*, 860 F.3d 1, 9 & n.1 (1st Cir. 2017) (explaining that, under Rule 12(c)(3), the First Circuit deems waived and declines to review an untimely motion to suppress that is not excused by good cause, even where the district court denied the motion on the merits after finding the motion untimely).[2]  In *Arias*, the defendant had the excuse—which the First Circuit rejected—that he had new counsel, with whom he had only been conferring for a relatively short time.  Defendants Heinel and Vavic have no such excuse.

---

[2]Unless otherwise noted herein, all internal citations, quotation marks, and alterations are omitted.

The defendants claim that they only uncovered the basis for their motion when the government filed a certification of authenticity in the *Abdelaziz* case. Dkt. 791 at 3. That is no excuse. The certification, sworn by a Supervisory Special Agent of the FBI, adds nothing to the discovery that the defendants received in April 2019. Rather, it states that phone providers are statutorily required to "have the ability to perform electronic surveillance pursuant to a court order *or other lawful authorization*" (*e.g.*, consent, discussed below), and that Supervisory Special Agent Jamaal King can authenticate the Title III and consensual recordings from June 2018 to March 2019 that were stored in the FBI's telephony collection system. Dkt. 791-1 at 8-10, ¶¶ 3, 4, 7. Since April 2019, the defendants have had ample time to review, among other things, (i) the complete set of Title III wiretap calls and the consensually recorded calls, (ii) all sealed court filings in connection with the wiretap, including the motion to seal appended as Exhibit A to their present motion, and (iii) the letter to AT&T and Singer's consent form appended as Exhibits B and D to their motion. From those documents, it was abundantly clear that AT&T provided technical assistance for the consensual interceptions, based on Singer's consent, after the court-authorized wiretap ended. The recently filed authenticity certification adds nothing to what the defendants should have already known from discovery. Accordingly, the sole basis the defendants provide for their untimely filing is not only insufficient to establish "good cause," it is also untrue. Their motion should be denied as untimely under Fed. R. Crim. P. 12(c)(3).

### B.     Title III Does Not Require a Court Order for Consensually Intercepted Calls, and Singer Both Expressly and Impliedly Consented to Interception

Singer's express and implied consent to the government's monitoring of his phone triggers the statutory exclusion for consensual interceptions from Title III.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510 *et seq.*, "prohibits the interception of telephone conversations, subject to certain

exceptions, without a court order." *United States v. Lewis*, 406 F.3d 11, 14 (1st Cir. 2005) (citing

18 U.S.C. §§ 2511, 2518); *accord United States v. Roy*, 349 F. Supp. 2d 60, 62 (D. Mass. 2003)

(Gorton, J.).   The law prescribes requirements that law enforcement must satisfy to engage in

"covert," that is *non-consensual*, surveillance.   *See Dalia v. United States*, 441 U.S. 238, 240 &

nn. 1–2 (1979) ("All types of electronic surveillance have the same purpose and effect: the *secret*

interception of communications.") (emphasis added). But as the First Circuit has explained,

"Congress, in its wisdom, chose to insert a myriad of exceptions and restrictive definitions into

Title III, purposely leaving certain wire communications unprotected."   *United States v. v. Diaz-*

*Diaz*, 433 F.3d 128, 134 (1st Cir. 2005) (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st

Cir. 1990)).

Consent is one of those myriad of exceptions to Title III's prohibitions on interception

absent court authorization.  Specifically, Section 2511(2)(c) provides the consent exception to Title

III's requirements:

> It shall not be unlawful under this chapter for a person acting under color of law to
> intercept a wire, oral, or electronic communication, where such person is a party to
> the communication or one of the parties to the communication has given prior
> consent to such interception.

18 U.S.C. § 2511(2)(c).   Or as Justice O'Connor has more plainly explained, Section 2511(2)(c)

expressly excludes consensual recordings from Title III's scope and "authorizes telephone calls to

be monitored if one party to the call consents to the monitoring."   *United States v. Conley*, 531

F.3d 56, 58 (1st Cir. 2008) (O'Connor, J.).  Thus, "if [one party] granted consent to monitoring of

his calls, their introduction into evidence would not violate [Title III]."   *Id.* (affirming denial of

motion to suppress).  This is unsurprising:  if the interception is by consent, then it is not secret to

the party whose phone is being intercepted.

Section 2511(2)(c)'s exclusion of consensually recorded communications from Title III's requirements has been repeatedly applied in the First Circuit and this District in a variety of contexts. *See, e.g.*, *United States v. Font-Ramirez*, 944 F.2d 42, 47 (1st Cir.2005) ("The statute permits the taping of conversations without [court] approval if a person who is a party to the conversation gives prior consent."); *see also Lewis*, 406 F.3d at 14 (affirming denial of motion to suppress consensually recorded calls); *United States v. Footman*, 215 F.3d 145, 154–55 (1st Cir. 2000) ("It is settled law [under Title III] that only one party need consent to the interception of the calls."); *United States v. Pratt*, 913 F.2d 982, 986–87 (1st Cir. 1990) ("While it is certainly true, as a general rule, that eavesdropping and wiretapping are permissible only with probable cause and a warrant, under federal law, consent of one party to a conversation is sufficient to permit a person acting under color of law to lawfully intercept a wire, oral, or electronic communication."); *Griggs-Ryan*, 904 F.2d at 116 (applying the "Title III exclusion applicable where one of the parties to the communication has given prior consent to such interception"); *Novak v. United States*, No. 10-11975-RGS, 2012 WL 170885, at *1 n.4 (D. Mass. Jan. 20, 2012) (finding argument that consensually recorded calls were inadmissible under Title III "doomed from the outset" because "[t]he consent exemption to Title III renders its exclusionary provisions inapplicable when one of the parties to the communication has given prior consent to such interception"); *United States v. Sanchez*, No. 05-10235-GAO, 2007 WL 9718522, at *3 (D. Mass. Sept. 7, 2007) (denying motion to suppress because individual, "after agreeing to cooperate and set up a cocaine buy with [defendant], consented to let [agents] listen in on his conversations as they were being conducted"). Accordingly, it is well-settled that "evidence obtained from a consensual wiretap conforming to 18 U.S.C. § 2511(2)(c) is admissible" without implicating Title III. *United States v. Adams*, 694 F.2d 200, 201 (9th Cir. 1982), *cert. denied*, 462 U.S. 1118 (1983).

Against this backdrop, the defendants effectively ask this Court to rewrite Title III and create new law.  Specifically, they contend that regardless of consent, a telecommunications company, which is an electronic communications service as defined by the statute, 18 U.S.C. § 2510(15),[3] cannot divulge information to law enforcement without a court order or a special certification under 18 U.S.C. § 2511(2)(a).  Dkt. 791 at 9.  In other words, the defendants maintain, if an individual consents to interception, and law enforcement uses, for example, a tape recorder, Title III is not implicated due to the consent exclusion.  But, according to the defendants, if the individual consents to the disclosure of communications by a telecommunication company to law enforcement, and the telecommunications company does so, Section 2511(2)(c)'s exclusion from Title III for consensual interceptions evaporates, and law enforcement must obtain a court order to execute consensual interceptions.

That is not the law.  Unsurprisingly, the defendants cite no case suggesting that there is such an unwritten exception to Section 2511(2)(c)'s explicit authorization of consensual interceptions, and the government is unaware of any such precedent.  *See, e.g.*, *Adams*, 694 F.2d at 201 ("[E]vidence obtained from a consensual wiretap conforming to 18 U.S.C. § 2511(2)(c) is admissible . . . .").  Nor do the defendants have any explanation for the parallel exception in 18 U.S.C. § 2511(3)(b), which states: "[An] entity providing electronic communication service to the public may divulge the content of any such communication . . . with the lawful consent of the originator or any addressee or intended recipient of such communication."   18 U.S.C.

---

[3] Section 2510(15) defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive *wire* or electronic communications."  18 U.S.C. § 2510(15) (emphasis added).  All parties agree that AT&T is an electronic communication service.  *See also In re United States for Order for Disclosure of Telecomms. Records*, 405 F. Supp. 2d 435, 445 (S.D.N.Y. 2005) (concluding that cellular telephone service that the customer uses and to which the subscriber subscribes is an 'electronic communication service' under section 2510(15)).

§ 2511(3)(b)(ii); *see also United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005) ("Section 2511(3), in turn, authorizes a communication service provider to divulge a communication to one other than the recipient in *four* specified circumstances [lists them, including consent]." (emphasis added)*; Shubert v. Metrophone, Inc.*, 898 F.2d 401, 406 (3d Cir. 1990) (applying 18 U.S.C. § 2511(3)(a) in a civil action in the context of cellphone communications).

Even the case law cited by the defendants refutes their argument.  They cite *In re Application of the United States*, 128 F. Supp. 3d 478 (D.P.R. 2015)),[4] but in that case, the court explained that Title III "authorizes law enforcement to conduct wiretaps *without court approval* where permission is given by one party to the communication."  *Id.* at 483 (emphasis added). Because the individual in that case consented to monitoring, the court explained that "law enforcement officers here *do not need an order* authorizing or approving the interception of electronic communications to and from [the] Target Phone, because § 2511(2)(c) allows law enforcement officials to intercept oral, wire, or electronic communications without [court] approval if . . . a party to the conversation gives prior consent."  *Id.* at 482 (emphasis added).  In that case, the issue before the court was the phone provider's refusal to provide technical assistance for the consensual interceptions without a court order, and the court thus ordered the provider to do so under to Fed. R. Crim. P. 41, precisely *because* the court did not have authority under Title III to order a consensual wiretap.  *See id.* at 484.

Likewise, in a recent case in the Eastern District of New York, the court found that it lacked authority under Title III or the All Writs Act to *order* a phone company to facilitate a consensual

---

[4]The defendants include a "*cf.*" citation to a decision in this District, where the court addressed a non-consensual Title III wiretap, which is not implicated by the defendants' motion.  *See United States v. Rodriguez*, No. 17-10066-IT, 2018 WL 988054, at *4 (D. Mass. Feb. 20, 2018) ("It is for the court, and not the service provider, to decide whether interception is warranted.").

wiretap where the company refused, but that the government *did not need* such an order to obtain

the phone company's voluntary assistance in light of the consent.  *See In re Application of the*

*United States*, 256 F. Supp. 3d 246 (E.D.N.Y. 2017).  The court wrote:  "It is no criticism to

observe that the government has not met its burden [under Title III] to secure an order permitting

the interception of communications for the simple reason that *no such order is legally required*

under the circumstances.  The Witness having provided consent, the government is within its rights

to intercept the Witness's communications without a court order."  *Id*. at 251 n.6 (citing 18 U.S.C.

§ 2511(2)(c)).

Here, the defendants argue that law enforcement *must* obtain court-authorization under

Title III to obtain technical assistance from a provider in executing a consensual wiretap.  But no

court has ever reached that conclusion.  To the contrary, courts have held that not only does law

enforcement not *need* court-authorization to execute a consensual wiretap under Section

2511(2)(c), but also that Title III does not provide courts the authority to order such consensual

wiretaps where providers decline to assist.  *See In re Application of the United States*, 128 F. Supp.

3d at 483 ("Title III also does not appear to provide the necessary authority for me to order provider

cooperation.").  In other words, the defendants suggest the government should have asked the court

to do something courts have held it cannot do under Title III.

Furthermore, the defendants argue that AT&T was barred by Title III from voluntarily

complying with the request to provide technical assistance with the consensual interceptions,

contending that service providers may only do so based on either an order or certification for

provider assistance pursuant to 18 U.S.C. § 2511(2)(a)(ii).  However, as noted above, the *Abdelaziz*

court rejected this argument as inconsistent with the plain language of Section (2)(d), which allows

"a person not acting under color of law to intercept a wire or electronic communication . . . where

11

one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d); *see also Abdelaziz*, Order, slip op. at 4.

Moreover, 18 U.S.C. § 2511(3) expressly permits "an entity providing electronic communication service" to divulge the contents of any communication "with the lawful consent of the originator or any addressee or intended recipient of such communication." 18 U.S.C. § 2511(3)(b)(ii). Such consent was obtained from Singer, the undisputed originator and recipient of every call over the monitored phone, and notice of that consent was provided to AT&T before AT&T assisted with the interceptions. Title III also grants a service provider complete immunity against liability for any civil or criminal violation under the statute where the provider made a "good faith determination that section 2511(3) . . . of this title permitted the conduct complained of." 18 U.S.C. § 2520(d)(3). Thus, AT&T's voluntary assistance was permissible according to the plain language of Title III. Taken as a whole, Title III plainly recognizes that its protections do not apply with party consent, and the defendants cite no authority providing that Title III's multiple consent provisions are null and void if an electronic communication service provides technical assistance.

Perhaps recognizing the weakness of their legal argument on consent under Title III, the defendants fall back to a semantic argument that Singer did not actually consent to monitoring. Dkt. 791 at 16. This is a frivolous argument, and tellingly, the defendants do not discuss the law on consent under Section 2511(2)(c) as applied to Singer, because it flatly contradicts their argument. It is "settled law in the First Circuit and elsewhere that Title III affords safe harbor" for both "explicit consent" and "implied consent." *Gilday v. Dubois*, 124 F.3d 277, 297 (1st Cir. 1997). As this Court has held, it is also "settled law" that "the consent exemption under Title III is construed broadly." *Roy*, 349 F. Supp. 2d at 63 (Gorton, J.). Here, there is no question that

Singer provided express written consent for law enforcement to monitor his phone calls.  He and his attorney signed a consent and acknowledgement form stating:  "I consent to the interception and recording of any and all communications made by me over *all telephones*, cellular or otherwise, provided to *or made available to me* by law enforcement agents in connection with actions taken by me in connection with law enforcement agents."  Dkt. 791-1 at 12 (emphasis added).  The First Circuit has found explicit consent "unambiguous" in similar circumstances.  *See, e.g.*, *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000) (finding "unambiguous[]" explicit consent where inmate signed a form indicating that he understood that any use of the telephone, except in calling an attorney, would be subject to monitoring).

Given the unambiguous consent on the form sent to AT&T, which the defendants have had since April 2019, the defendants retreat to word play, contending that Singer did not consent to monitoring of his *personal* phone, but rather only to monitoring of phones given to him by law enforcement.  Not true.  The consent on the form encompasses "all telephones, cellular or otherwise, provided to or *made available to me* by law enforcement agents in connection with actions taken by me in connection with law enforcement agents."  Law enforcement agents only "made available" one phone for Singer to make calls at the agents' direction.  It was his personal phone, which the agents allowed Singer to use so that he could continue to conduct his business as part of the government's proactive, covert investigation.  Moreover, even assuming the consent form Singer and his attorney both signed somehow did not encompass his personal cell phone (which it did), Singer gave implied consent to the interception and recording of calls over this device by making calls to the defendants at the direction of, and using ruses designed by, law enforcement agents.  "In the Title III milieu as in other settings, consent inheres where a person's behavior manifests acquiescence or a comparable voluntary diminution of his or her otherwise

13

protected rights." *Griggs-Ryan*, 904 F.2d at 116.  Implied consent is "inferred from surrounding

circumstances indicating that the party knowingly agreed to the surveillance," including "language

or acts which tend to prove . . . that a party knows of, or assents to, encroachments on the routine

expectation that conversations are private." *Id.* at 116–17 (finding implied consent given repeated

actual and constructive notice of monitoring).  By repeatedly making calls at the direction of law

enforcement, on a phone that he knew was being intercepted and recorded, Singer consented.

### C.      Suppression Is Not Warranted Under the Good-Faith Doctrine

Even were the Court to conclude that the defendants have demonstrated good cause for

their untimely suppression motion (which they have not), and even were the Court to conclude

either that (i) law enforcement was required to obtain a court-authorized Title III wiretap order

despite Singer's consent, or that (ii) Singer did not validly consent, suppression would nevertheless

be unwarranted.  No court has ever construed Section 2511(2)(c) to hold that judicial authorization

is required for consensual interceptions.  Nor has any court, to the government's knowledge, ever

found that a consent form signed by both an individual and his attorney was insufficient to trigger

Section 2511(2)(c)'s exclusion of consensual interceptions from Title III.  Accordingly, the

government acted in good faith by executing the consensual interceptions in accordance with

Section 2511(2)(c) and First Circuit precedent broadly construing consent and holding that Title

III's requirements are not implicated by consensual wiretaps.  *See, e.g.*, *United States v. Rose*, 914

F. Supp. 2d 15, 23 (D. Mass. 2012) (Gorton, J.) (citing *Davis v. United States*, 564 U.S. 229 (2011))

(denying motion to suppress, and explaining that "the last resort of suppression [wa]s not

warranted [] because the agents did not exhibit deliberate, reckless, or grossly negligent disregard"

and because they "rel[ied] on the consensus of lower courts and a common-sense reading of

Supreme Court doctrine").  "To penalize the government when it acts in good faith is unlikely to

have a deterrent effect on future 'misconduct.'"  *United States v. Vest*, 842 F.2d 1319, 1334 (1st

Cir. 1988) (rejecting dismissal based on the government's good faith, but legally incorrect, belief

in the legality of playing a recording to a grand jury in violation of Title III).

## III.    CONCLUSION

For the foregoing reasons, the defendants' motion to suppress should be denied.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: /s/Kriss Basil
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
KRISS BASIL
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/Kriss Basil
KRISS BASIL